UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LANCE MCNEAL,

        Plaintiff,

v.

RAYMOND HARGETT et al.,

        Defendants.
_____/

Case No. 1:20-cv-596

Honorable Paul L. Maloney

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC

Director Heidi Washington and the following MCF officials: Warden Sherry L. Burt; Resident Unit Manager B. West; Prison Counselor Russell Loomis; Warden's Administrative Assistant Davod W. Brazee; Correctional Lieutenant Louis Donley; and Correctional Sergeant Raymond Hargett.

According to the complaint, an attorney, Melissa El-Johnson, volunteered to assist Plaintiff in seeking new evidence to challenge his criminal case in the state courts. In response to requests issued under the Freedom of Information Act and subpoenaes submitted to the Detroit Police Department, the Wayne County Prosecutor's Office, and the Wayne County Medical Examiner's Office, Ms. El-Johnson discovered new crime-scene photographs that had not been turned over to the defense prior to Plaintiff's trial. Two of those photographs depicted garden shears lying next to the decedent's body, corroborating Plaintiff's trial testimony that the victim had used garden shears to attack him. The prosecution allegedly used the absence of the shears in other pictures to undermine Plaintiff's defense.

Plaintiff alleges that he received legal mail from Ms. El-Johnson on October 21, 2019, enclosing the two crime-scene photographs. When scanning the incoming legal mail for contraband, Defendant Hargett withheld the photographs and issued a Notice of Intent to Conduct an Administrative Hearing (NOI), indicating that the photographs violated MDOC Policy Directive (PD) 05.03.118(NN) (prohibiting prisoners from receiving, inter alia, "Official photographs of a victim at a crime scene or depicting injuries to a victim").

Plaintiff filed a grievance against Defendant Hargett that same day, alleging that Hargett had violated prison policy by reading Plaintiff's legal mail and withholding the photographs. Defendant Donley interviewed Plaintiff about the grievance later that day and advised Plaintiff that he would check with the appropriate staff. Plaintiff claims that, on

2

information and belief, Defendant Brazee was the appropriate staff member to decide whether to allow the pictures. Defendant Donley advised Plaintiff that he thought thar Plaintiff would receive good news about his grievance. Shortly thereafter, however, Plaintiff received Defendant Loomis' October 24, 2019, decision on the NOI, finding that the photographs violated prison policy. (Admin. Hr'g Rep., ECF No. 1-1, PageID.33.) Plaintiff was instructed to either mail out the photographs at his own expense or have them picked up at the facility. If neither was done within the designated timeline, the photographs were to be destroyed. (*Id.*)

On December 2, 2019, Defendant Donley denied Plaintiff's grievance at Step I, concluding that Defendant Hargett had merely scanned Plaintiff's legal mail, not read it, and that the photographs were prohibited under MDOC PD 05.03.118. (Step-I Grievance Resp., ECF No. 1-1, PageID.28.) Plaintiff appealed the Step-I determination to Step II, but Defendant Burt upheld the Step-I response. (Step-II Grievance Resp., ECF No. 1-1, PageID.30.) Plaintiff filed a Step-III grievance, which was denied by the MDOC Manager of Grievance Section, Richard Russell, on February 6, 2020. (Step-III Grievance Resp., ECF No. 1-1, PageID.31.)

Plaintiff complains that, as a result of Defendants' taking of the crime-scene photographs, Plaintiff, acting pro se, was unable to file a properly supported motion for relief from judgment in the state trial court. Plaintiff contends that he was forced to hire an appellate attorney to bring his claims to all three levels of the state courts, at total cost of $25,000.00.

Plaintiff asserts that Defendant Hargett's actions to review his legal mail and remove the photographs violated Plaintiff's First and Sixth Amendment rights to legal mail, and that Defendants Washington, Burt, Donley, Loomis, West, Burt, and Brazee contributed to that deprivation by adopting and enforcing MDOC PD 05.03.118 ¶ NN(16). He also alleges that the application of the policy to confiscate the photographs and uphold the confiscation of the

3

photographs, interfered with this right to access the courts. Further, he argues that Defendants actions violated prison policy and deprived him of due process.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.  Legal Mail

Plaintiff asserts that Defendant Hargett violated his First and Sixth Amendment rights to receive confidential legal mail, by scanning Plaintiff's legal mail for contraband and confiscating the photographs. He contends that other Defendants are responsible for the violation, because they adopted and enforced MDOC PD 05.03.118 ¶ NN(16), upheld the confiscation, and denied his grievances. Plaintiff appears to contend that the policy on crime-scene photographs improperly restricts his First Amendment and Sixth Amendment rights to receive incoming legal mail.

The policy that Plaintiff challenges provides, in relevant part, as follows:

> Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:
>
> * * *
>
> 16. Official photographs of a victim at a crime scene or depicting injuries to a victim sustained as a result of a crime that were taken for purposes of criminal investigation or prosecution. This includes photographs of the autopsy of a victim.

MDOC PD 05.03.118 ¶ NN(16).

While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90.

Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence). *See also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh*, 490 U.S. 401; *Turner*, 482 U.S. 78. The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987), *appeal dismissed*, 841 F.2d 1126 (6th Cir. 1988). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and

6

the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts), *cited in Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband, pursuant to a uniform and evenly applied policy. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate).

Although Plaintiff makes the conclusory allegation that Defendant Hargett "skimmed" his legal mail, Plaintiff offers no facts suggesting that Hargett skimmed any written content from the attorney. Instead, Plaintiff alleges only that Hargett looked through the items in the mailing and discovered the enclosed photographs, which constituted contraband under prison policy. As a consequence, to the extent that Plaintiff argues that Defendant Hargett violated his First and Sixth Amendment rights by reading his legal mail, he fails to allege facts sufficient to support the claim.

Moreover, to the extent that Plaintiff challenges the policy itself and its applicarion, he also fails to state a claim. According to the complaint, Defendants followed their own uniform policy of not allowing crime-scene photographs and autopsy pictures. Defendants, through the express terms of their policy, indicated that such photographs posed a threat to the security, good order, or discipline of the facility, facilitated or encouraged criminal activity, or interfered with the rehabilitation of prisoners. Plaintiff makes no attempt to contradict the stated purpose of the

7

policy. In addition, on its face, the policy of prohibiting crime-scene and autopsy photographs is rationally related to concerns about prisoner rehabilitation and rationally related to the security of the facility, as such photographs could become the basis for transactions between prisoners or friction with other prisoners. Thus, the first *Thornburgh* factor is met in the instant case.

Second, Plaintiff had ample other opportunities to exercise his rights under the First Amendment. He remains able to receive both attorney mail and ordinary mail that does not fall within the prohibited categories. In addition, although Plaintiff argues that his possession of the pictures was necessary to the filing of a successive motion for relief from judgment, he utterly fails to demonstrate that point. Knowing what his attorney-volunteer said about the newly discovered photographs, Plaintiff had all the information he needed to file his motion for relief from judgment in state court. He could have secured the filing of the evidentiary support—the photographs—by a person located outside the prison. The policy did not demand destruction of the photographs, and Plaintiff could have ensured that the evidence was submitted to the state court.

Third, although Plaintiff implies that accommodating his request could have been accomplished at little cost to the facility, the Court finds no support for the argument in the complaint or the law. Accommodation of Plaintiff's request for an exception to the policy would create a significant burden for the administration of the facility and would place a risk on the facility of being perceived as engaging in arbitrary enforcement of its policies. Plaintiff's request would have required not only a hearing on Plaintiff's possession of the material, but also the monitoring of Plaintiff's possession to ensure that it did not exceed the scope of his individual need and to address any security concerns that arose during the possession. It also would have required Defendants to respond to and distinguish any demands by other prisoners that their

8

contraband items be permitted on equal protection grounds. Thus, the third prong of *Thornburgh* also cuts against Plaintiff's claim.

Finally, for similar reasons, it is difficult to see how any ready alternative would have accommodated Plaintiff's desire to possess the documents without creating the problems caused by such an exception.

Having reviewed Plaintiff's challenge to the policy, the Court concludes that Plaintiff fails to state a claim that any Defendant violated his First and Sixth Amendment rights to his incoming legal mail, either by improperly reading that mail or by creating and applying the policy.

## IV. Access to the Courts

Plaintiff next asserts that, by imposing and applying MDOC PD 05.03.118 ¶ NN(16), Defendants interfered with his right to access the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also*

9

*Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

Plaintiff contends that he suffered actual injury, because his inability to possess the photographs prevented him from proceeding pro se in filing (and supporting) a successive motion

for relief from judgment, thereby forcing him to raise funds to retain counsel. Plaintiff's argument fails for multiple reasons.

First, no legal authority suggests that the prison has an obligation to admit otherwise-prohibited documents simply because Plaintiff claims to need them for a particular case. Second, as the Court previously discussed, the fact that Plaintiff could not possess the photographs in prison did not prevent him from using those documents to make his argument for relief and authorizing someone else to file the supporting documents in the state court. Indeed, Plaintiff could have mailed his motion to his volunteer attorney and asked her to attach the photographs before mailing them to the court. The fact that she ultimately submitted an affidavit in support of his motion for relief from judgment suggests that such a solution would have been available to Plaintiff. (El-Johnson Aff., ECF No. 1-1, PageID.46-48.)

Third, Plaintiff has been able to overcome any difficulty in filing his motion for relief from judgment. A motion for relief from judgment was filed in the Wayne County Circuit Court on May 1, 2020, and the motion is set for hearing on December 7, 2020. *See* Wayne Cnty. Cir. Ct. Electronic Docket, Case No. 02-011056-01-FC, https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=80800 (last visited Aug. 24, 2020).

For all these reasons, Plaintiff cannot demonstrate that he suffered actual injury from the limitation on his possession of photographs. As a consequence, he fails to state a claim based on the denial of his right to access the courts.

## V.    Violation of Prison Policy – Due Process

Plaintiff also arguably suggests that Defendants misapplied PD 05.03.118, because, pursuant to PD 04.07.112 ¶ O(1), he was entitled to possess the legal materials from his own case. Alternatively, he argues that Defendants Donley and Burt, in denying his grievances, misapplied PD 05.03.118, by allowing Defendant Hargett to skim his mail and deem photographs to be

11

physical contraband. Plaintiff appears to contend that the misapplication of the policy directives and the grievance policy violated his right to due process.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendant's' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, Plaintiff has no due process right to file a prison grievance or to have it resolved in accordance with prison policy. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907,

at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   September 1, 2020              /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge