UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE MCNEAL, #302062,

    Plaintiff,                           Hon. Paul L. Maloney

v.                                              Case No. 1:20-cv-596

RAYMOND HARGETT, et. al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff initiated this action on July 1, 2020, against numerous Michigan Department of Corrections (MDOC) officials. (ECF No. 1). In his initial complaint, Plaintiff alleged the following.

An attorney who was assisting Plaintiff advance a post-conviction challenge to his conviction discovered two crime-scene photographs, corroborating Plaintiff's trial testimony, which had not been provided to Plaintiff prior to trial. On October 21, 2019, the attorney mailed the two photographs to Plaintiff. Correctional Sergeant Raymond Hargett withheld the photographs as contraband pursuant to MDOC Policy Directive

-1-

05.03.118 ¶ NN, which prohibits prisoners from possessing photographs of a victim at a crime scene or depicting injuries to a victim. The contraband determination was upheld and Plaintiff was ordered to either mail the photographs out of the prison or have someone come to the facility and retrieve them.

Plaintiff sued Hargett and numerous other MDOC officials alleging violations of his First, Sixth, and Fourteenth Amendment rights. On screening, the Honorable Paul L. Maloney dismissed Plaintiff's complaint for failure to state a claim on which relief could be granted. (ECF No. 4). Plaintiff appealed the matter to the Sixth Circuit, which, with two exceptions, affirmed Judge Maloney's decision. (ECF No. 13). The first exception was that the Court reinstated Plaintiff's as-applied challenge to MDOC Policy Directive 05.03.118 ¶ NN. The court also ordered that Plaintiff's denial of access to the courts claims be dismissed *without* prejudice.

On March 23, 2022, Plaintiff filed an amended complaint against Defendant Hargett and an unidentified number of Doe Defendants. (ECF No. 28). Based on the same general factual allegations identified above, Plaintiff alleges that Defendant Hargett's application of MDOC Policy Directive 05.03.118 ¶ NN violated his constitutional rights. Defendant Hargett now moves for summary judgment. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot

merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

### I. Plaintiff's Sixth and Fourteenth Amendment Claims

The only claims remaining in this matter are Plaintiff's allegation that Defendant Hargett's application of MDOC Policy Directive 05.03.118 ¶ NN violated his constitutional rights. Specifically, Plaintiff alleges that Hargett's actions violated his First, Sixth, and Fourteenth Amendment rights.

The Sixth Circuit, in ruling that Plaintiff's policy directive challenge go forward, based its conclusion on the potential violation of Plaintiff's "basic right" to "receive materials of a legal nature, which have impact upon or import with respect to [Plaintiff's] legal rights and/or matters." (ECF No. 13, PageID.134). In support of this conclusion,

the court cited *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), a case involving a prisoner's First Amendment right to receive legal mail.

The Sixth Circuit, however, affirmed the dismissal of Plaintiff's Fourteenth Amendment claim on the ground that such was duplicative of his First Amendment claim. (ECF No. 13 at PageID.137). As for Plaintiff's Sixth Amendment claim, the Court notes that Plaintiff has no Sixth Amendment right to counsel when pursuing post-conviction relief. *See, e.g., Hugueley v. Mays*, 964 F.3d 489, 500 (6th Cir. 2020). Accordingly, the undersigned recommends that with respect to Plaintiff's Sixth and Fourteenth Amendment claims, Defendant's motion for summary judgment be granted.

## II.    Plaintiff's First Amendment Claim

Plaintiff alleges that Defendant Hargett, by rejecting Plaintiff's incoming legal mail pursuant to MDOC Policy Directive 05.03.118 ¶ NN, violated his First Amendment rights. The specific provision in question provides, in relevant part, as follows:

> NN.  Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:
>
>    16.  Official photographs of a victim at a crime scene or depicting injuries to a victim sustained as a result of a crime that were taken for purposes of criminal investigation or prosecution. This includes photographs of the autopsy of a victim.

A.   Qualified Immunity

Defendant first argues that he is entitled to qualified immunity. The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated. *Ibid.* When government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). To find that a right is clearly established, the Court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005). This does not require the plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Where a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the context of a motion for summary judgment, the plaintiff

must establish that: (1) the defendant's conduct violated her rights, and (2) such rights were clearly established when the defendant acted. *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013).

The right which Plaintiff alleges was violated here, the right of a prisoner to possess the type of victim and/or crime scene photographs specifically prohibited by the MDOC policy provision quoted above, does not appear to have been recognized by the Supreme Court or any court within the Sixth Circuit. Plaintiff has failed to identify any authority holding that it violates the First Amendment for a state prison to prohibit a prisoner from receiving or possessing the type of photographs presently at issue. The Court has likewise failed to locate any such authority. Accordingly, the undersigned recommends that to the extent Plaintiff seeks to obtain monetary damages from Defendant Hargett in his personal capacity, Defendant is entitled to qualified immunity.[1] This determination, however, does not preclude Plaintiff from obtaining declaratory or injunctive relief, both of which are specifically requested in Plaintiff's amended complaint. *See, e.g., Kanuszewski v. Michigan Department of Health and Human Services*, 927 F.3d 396, 417-18 (6th Cir. 2019) ("qualified immunity only immunizes defendants from monetary damages – not injunctive or declaratory relief").

---

[1] To the extent Plaintiff seeks to obtain monetary damages from Defendant in his official capacity, the previous dismissal of such claims was affirmed by the Sixth Circuit. (ECF No. 13, PageID.132-33).

B.      Plaintiff's Claims for Declaratory and Injunctive Relief

In addition to requesting monetary damages against Defendant Hargett, Plaintiff seeks declaratory and injunctive relief. Defendant advances several arguments in favor of summary judgment, none of which are persuasive. Two of Defendant's arguments are easily rejected.

First, Defendant argues that, because he was not the person who made the final decision to reject the mail in question, he cannot be he held liable for his actions. Defendant has identified no authority supporting this position, however. Accordingly, this argument is rejected. Next, Defendant argues that because Plaintiff ultimately received the photographs in question, "there is no need for injunctive relief." While this argument is insufficiently developed, Defendant appears to argue that Plaintiff's request for injunctive relief is moot. Plaintiff, however, asserts that he continues to pursue legal relief related to his criminal conviction. Defendant has presented no evidence to the contrary. Thus, the Court rejects Defendant's mootness argument. Turning to the merits of Plaintiff's claim, Defendant's arguments fair no better.

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," s*ee O'Lone v. Shabazz*, 482 U.S.

342, 348 (1987), inmates nevertheless retain the First Amendment protection to receive legal mail and communicate with their chosen counsel. *See, e.g., Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003). But "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018) ("federal courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," thus courts "generally defer to the judgments of prison officials in upholding prison regulations against constitutional challenge so long as the regulations are reasonably related to penological interests").

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was

articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* at 89.  This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349).  The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors.  If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest.  It should further be noted that the *Turner* standard is not a "least restrictive alternative" test

requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court is persuaded by this reasoning and concludes, therefore, that with respect to the *Turner* factors, Defendant bears the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This particular burden is "slight, and in certain

instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156. The Court further concludes that with respect to the final three *Turner* factors, Plaintiff ultimately bears the burden.

With respect to the initial *Turner* factor, the Sixth Circuit has already found the initial *Turner* factor satisfied. Specifically, the court observed:

> MDOC PD 05.03.118 ¶ NN satisfies the first *Turner* factor. This regulation is intended to exclude mail "that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." We agree with the district court that this is a legitimate governmental interest and that the regulation is rationally connected to it because photographs of victims could, in circumstances needing little imagination to conceive of, "become the basis for transactions between prisoners or friction with other prisoners."

(ECF No. 13 at PageID.135).

Consideration of the remaining factors weighs against Defendant's request for relief.

A.   Whether There are Alternative Means of Exercising the Right

With respect to this factor, the Sixth Circuit found the existence of "several material issues of fact" which "lean against [a screening] dismissal." (ECF No. 13, PageID.135-36). Specifically, the court observed that it was "unclear from the record before us whether [Plaintiff] had, as the district court stated, someone who was willing to file his motion for him." (*Id.*, PageID.135). The court further observed that "[t]here is also an issue of fact regarding whether [Plaintiff] could have had someone. . .bring him the photographs in person either

to review with him or to give to him, or whether this would have been permissible under the prison's policies." (*Id.*).

Defendant argues that Plaintiff could have reviewed the photographs with an attorney either during an in-person visit or through a video conference. Defendant has presented no evidence, however, that such alleged alternatives were known or ever communicated to Plaintiff. Plaintiff was ultimately permitted to possess the photographs in question after a separate attempt to mail the photographs to Plaintiff was approved by a different MDOC official. As noted below, however, it does not appear that Plaintiff was permitted to ultimately possess the photographs pursuant to an alternative procedure. Instead, it appears that Plaintiff was permitted to possess the photographs after a different MDOC official simply determined that Plaintiff's possession of such did not violate the policy in question. The undersigned finds, therefore, that this factor does not weigh in Defendant's favor.[2]

B. The Impact of Accommodation

With respect to this factor, Defendant argues that the "MDOC restricts crime scene photographs depicting a deceased victim for numerous reasons." The Court does not dispute that permitting inmates to possess such photographs has

---

[2] The Court recognizes that Plaintiff was ultimately able to locate an attorney who filed on Plaintiff's behalf a post-conviction motion for relief in state court. It appears, however, that such did not occur until after Plaintiff was permitted to possess the photographs in question. Thus, the Court finds this circumstance not particularly relevant to the present analysis.

the potential to negatively impact the safety and security of a prison and all the people who live and work therein. Such largely misses the point, however, because the question presented by Plaintiff's claim is whether the application of the subject policy to his specific circumstance violated the First Amendment.

Defendant's argument that possession of crime scene photographs by prisoners, generally speaking, has the potential to cause harm within the prison is not particularly relevant. What is relevant, however, is that Plaintiff was later permitted to possess the photographs in question without any resulting problem or disturbance within the facility. As the Sixth Circuit previously indicated, this weighs against Defendant's position. The undersigned agrees and finds that this factor does not weigh in Defendant's favor.

      C.    Whether There are Ready Alternatives Available

On the question whether there existed ready alternatives that fully accommodated Plaintiff's rights at de minimis cost to valid penological interests, Defendant offers no argument. As the Sixth Circuit noted, however, the fact that Plaintiff was subsequently permitted to possess the photographs in question suggests the possibility that the prison "was, in fact, able to find a ready alternative to confiscation without placing a burden on the facility or causing disruption among the inmates." (ECF No. 13, PageID.136).

If accurate, this circumstance would likely balance this factor in Defendant's favor. Defendant, however, has presented no evidence that any such "alternative to confiscation" existed and, in fact, argues that the decision to later allow Plaintiff to possess the photographs in question was made by a former prison official whose decision is neither consistent with policy nor supported by the MDOC. In other words, Defendant argues that Plaintiff was not permitted to possess the photographs pursuant to some "alternative" arrangement. Instead, Defendant appears to concede that Plaintiff was simply allowed to possess the photographs without restriction. Defendant has presented no evidence that an "alternative to confiscation" existed in Plaintiff's circumstance. Accordingly, this factor does not weigh in Defendant's favor.

In sum, none of the final three *Turner* factors weigh in Defendant's favor. Accordingly, the undersigned recommends that to the extent Plaintiff seeks declaratory and injunctive relief, Defendant's motion for summary judgment be denied.

### III. Doe Defendants

In his amended complaint, Plaintiff names as defendants an unidentified number of John Does. Plaintiff makes no factual allegations in his amended complaint against any John Does. Instead, Plaintiff states that he added these John Does to his amended complaint in the event he later learns that such persons "were involved in or responsible for the MDOC policies and actions" that violated his rights. It is not proper for a plaintiff to name persons as defendants in the event subsequent facts support claims

against them. The proper approach is, once a plaintiff learns of facts supporting additional claims or causes of action, to move the Court to amend the complaint. Accordingly, the undersigned recommends that the John Doe Defendants be dismissed from Plaintiff's amended complaint.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 38) be granted in part and denied in part. Specifically, the undersigned recommends that: (1) Plaintiff's Sixth and Fourteenth Amendment claims be dismissed; (2) Plaintiff's First Amendment claim seeking monetary damages against Defendant Hargett in his personal capacity be dismissed on qualified immunity grounds; (3) Plaintiff's First Amendment claim seeking declaratory and injunctive relief go forward; and (4) the John Doe Defendants be dismissed from Plaintiff's amended complaint.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: May 22, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge